UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Victor H. P. L.,<br><br>          Plaintiff,<br><br>v.<br><br>Martin O'Malley, Commissioner of Social Security,<br><br>          Defendant. | Case No. 2:24-cv-00550-DJA<br><br>**Order** |

Before the Court is Plaintiff Victor H. P. L.'s brief moving for reversal and payment of benefits (ECF No. 12) and the Commissioner's motion to remand (ECF No. 16). Plaintiff filed a reply. (ECF No. 17). Because the Court finds that remand, and not an award of benefits, is the appropriate relief, it denies Plaintiff's motion and grants the Commissioner's motion. The Court finds these matters properly resolved without a hearing. LR 78-1.

## **BACKGROUND**

**I.    Procedural history.**

Plaintiff filed an application for a period of disability and disability insurance benefits on March 17, 2018, alleging disability commencing March 1, 2015. (ECF No. 12 at 3). The Commissioner denied the claim by initial determination on September 21, 2018, and on reconsideration on May 2, 2019. (*Id.*). Plaintiff requested a *de novo* hearing and on November 3, 2020, the ALJ presiding over the matter published an unfavorable decision. (*Id.*). The Appeals Council denied Plaintiff's request for review on June 22, 2021. (*Id.*). Plaintiff appealed the decision and this court remanded the matter for further proceedings on September 8, 2022. (*Id.*). The ALJ on remand published an unfavorable decision on January 19, 2024. (*Id.*). Plaintiff did not file exceptions within thirty days of the ALJ decision and the Appeals Council did not assume jurisdiction on its own motion within sixty days of the ALJ decision. (*Id.*). So, the ALJ decision

became the final decision sixty days after January 19, 2024, and Plaintiff filed his application to proceed *in forma pauperis* less than sixty days after the decision became final. (ECF No. 1).

## II. The ALJ decision.

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a). (AR 3472-1482). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period of the alleged onset date of March 1, 2015, through his date last insured of December 31, 2018. (AR 1473). At step two, the ALJ found that Plaintiff has the following severe impairments: right shoulder SLAP tear, acromioclavicular joint arthrosis status-post decompression and repair; right hip osteoarthritis; lumbar spine degenerative disc disease; and cervical spine degenerative disc disease. (AR 1473-1474). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 1474). In making this finding, the ALJ considered Listings 1.15 and 1.18. (AR 1474-1475).

At step four, the ALJ found that Plaintiff,

> has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except lift and carry 20 pounds occasionally and 10 pounds frequently; sit for six hours, stand for six hours, and walk for six hours; push and pull as much as he can lift and carry; occasionally reach overhead to the left and occasionally reach overhead to the right; frequently reach to the left and frequently reach to the right for all other reaching; climb ramps and stairs frequently, climb ladders, ropes, or scaffolds occasionally, balance frequently, stoop occasionally, kneel frequently, crouch frequently, and crawl occasionally; and work at unprotected heights and around moving mechanical parts frequently.

(AR 1475-1480).

At step five, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 1481). At the October 11, 2023, hearing preceding the ALJ's decision, the vocational expert testified that a person with Plaintiff's RFC could perform the jobs of assembler, electrical accessories; subassembler; and routing clerk. (AR 1414-15). The ALJ then asked the vocational

expert, "[w]ould any of these jobs be affected adversely by an inability to speak, read, or write English?" (AR 1415). The vocational expert responded that "that would rule out, based on your hypothetical, the three jobs…" (AR 1415). The ALJ then asked "[a]re there other jobs with the RFC that do not require English-speaking?" (AR 1415). The vocational expert then confirmed that there are no other jobs available where the hypothetical individual was not able to speak English. (AR 1415). The ALJ did not question the vocational expert further on this topic.

However, in the ALJ's written decision, at step five, the ALJ found that Plaintiff could perform these jobs. (AR 1482). The ALJ stated that he "rejects the vocational expert's testimony that the inability to communicate in English would eliminate all light jobs because the unskilled jobs identified do not themselves require literacy in any language." (AR 1482). Accordingly, the ALJ found that Plaintiff had not been disabled from March 1, 2015, the alleged onset date, through December 31, 2018, the date last insured. (AR 1482).

## **STANDARD**

The court reviews administrative decisions in social security disability benefits cases under 42 U.S.C. § 405(g). *See Akopyan v. Barnhard*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) states, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action…brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." *Id.* The Ninth Circuit reviews a decision of a District Court affirming, modifying, or reversing a decision of the Commissioner *de novo*. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir.

2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

## DISABILITY EVALUATION PROCESS

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R.

§§ 404.1520, 416.920).¹  If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(a)(4)(i).  SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit.  20 C.F.R. § 404.1572(a)-(b).  If the individual is engaged in SGA, then a finding of not disabled is made.  If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities.  20 C.F.R. § 404.1520(c); 20 C.F.R. § 920(a)(4)(ii).  An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work.  20 C.F.R. § 404.1521; 20 C.F.R.§ 920(c); *see also* Social Security Rulings ("SSRs") 85-28.  If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526; 20 C.F.R. § 416.920(a)(4)(iii).  If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509; 20 C.F.R. § 416.909), then a finding of disabled is made.  20 C.F.R. § 404.1520(h); 20 C.F.R.

---

¹ 20 C.F.R. § 404 addresses federal old-age, survivors, and disability insurance while 20 C.F.R. § 416 addresses supplemental security income for the aged, blind, and disabled.  However, the five-step evaluation process under either section is the same.

§ 416.920(a)(4)(iii). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's RFC, which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; 20 C.F.R. § 416.945; *see also* SSR 16-3p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must evaluate the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.913(a)(2).

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(a)(1)(iv). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years before the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565; 20 C.F.R. § 416.960(b)(1)(i). If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

Step five requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g); 20 C.F.R. § 416.920(a)(4)(v). If she can do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is

responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42.

## ANALYSIS AND FINDINGS.

**I.     Whether remand or award of benefits is appropriate to address the ALJ's error.**

   ***A.     The parties' arguments.***

Plaintiff argues that the ALJ erred at step five because, at that stage, the vocational expert only identified jobs that require Plaintiff to read, write, and speak English, which he does not. (ECF No. 12 at 5-9). In response to a hypothetical from the ALJ asking whether Plaintiff's ability to perform the jobs of assembler, electrical accessories; subassembler; and routing clerk would be impacted by Plaintiff's inability to read, write, or speak English, the vocational expert responded that Plaintiff's inability would rule out those jobs. (AR 1415). The vocational expert was unable to identify any other light occupations. (AR 1415). Plaintiff asserts that the ALJ erred by then rejecting the vocational expert's testimony, even though the ALJ is not a vocational expert and even though that the Dictionary of Occupational Titles ("DOT") still states that all three occupations require a language level of 2.[2] (ECF No. 12 at 7). Plaintiff argues that, because the record has been fully developed and the uncontradicted vocational expert testimony demonstrates

---

[2] Language Level 2 requires the following:

> READING: Passive vocabulary of 5,000-6,000 words. Read at a rate of 190-215 words per minute. Read adventures stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.
>
> WRITING: Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs.
>
> SPEAKING: Speak clearly and distinctly with appropriate pauses and emphasis, correct punctuation, variations in word order, using present, perfect, and future tenses.

United States Department of Labor, Employment and Training Administration, *Dictionary of Occupational Titles*, Appendix C (4th ed.), https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC (last visited January 23, 2025); *see id.* at 729.687-010 (assembler, electrical accessories I); *see id.* at 729.684-054 (subassembler); *see id.* at 222.687-022 (routing clerk).

that there are no jobs that exist in significant numbers in the national economy, the Court should reverse and award benefits. (*Id.* at 8).

The Commissioner moves to remand the decision, conceding that the ALJ did err, but disagreeing with the remedy of awarding benefits.³ (ECF No. 16 at 2). The Commissioner argues that remand, not an award of benefits, is appropriate here because "it is not clear that Plaintiff would be unable to perform any other work in the national economy." (*Id.*). The Commissioner asserts that the requirements necessary for the Court to credit the vocational expert's testimony as true are not present here because the vocational expert's testimony is not

---

³ The Commissioner argues two points that the Court does not address here.

First, the Commissioner argues that, in 2020, the Social Security Administration changed the way it considers a claimant's education abilities by removing a claimant's inability to communicate in English as an education category. *See* Social Security Ruling ("SSR"), 20-01p, 2020 WL 1083309 (Apr. 27, 2020); *see* Removing Inability to Communicate in English as an Education Category, 85 Fed. Reg. 10,586 (Feb. 25, 220) (to be codified at 20 C.F.R. § 404 and § 416). But the Commissioner does not address whether the Court should apply these changes to determine Plaintiff's case given the fact that they became active when Plaintiff's case was pending before the ALJ. This discussion is particularly absent given the fact that the United States Supreme Court has adopted a presumption against retroactivity with respect to statutes, which presumption at least one court in this district has applied to the Social Security context. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 272 (1994); *see Kokal v. Massanari*, 163 F.Supp.2d 1122, 1130 (C.D. Cal. 2001). Additionally, the changes to which the Commissioner cites address education categories and not language levels included in the DOT. But Plaintiff's argument centers on the language levels in the DOT, not on the educational category that the ALJ assessed. The Commissioner even concedes this argument, stating that he "agrees that the ALJ did not address the apparent conflict between the jobs identified at step five and the [DOT], which shows that they each required language level 2." (ECF No. 16 at 4). And the Commissioner provides no argument or reasoning about why the Court should find that the changes related to education categories also apply to language levels for the purposes of its analysis. Because the Commissioner's arguments regarding these changes are underdeveloped, the Court does not consider them. *See Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 582 n.3 (D. Nev. 2013).

Second, the Commissioner brings up that "the prior vocational expert testified that an individual with Plaintiff's residual functional capacity could perform other jobs." (ECF No. 16 at 5) (quoting AR 100-01). But Plaintiff already appealed the issue of the prior vocational expert's testimony in *Victor H.P.L. v. Kijakazi*, No. 2:21-cv-01376-BNW (D. Nev.). And the court there found that the vocational expert's "brief testimony does not provide substantial evidence that Plaintiff could perform the three occupations identified." *Victor H.P.L.*, No. 2:21-cv-01376-BNW, at ECF No. 20 pg. 11 (D. Nev. Sept. 8, 2022). The Commissioner proffers no argument or authority providing a basis for the Court to reconsider the prior vocational expert's testimony at this stage. So, the Court declines to do so.

consistent with Plaintiff's own work history. (*Id.*). The Commissioner points out that Plaintiff's work history shows that he was gainfully employed for over a decade despite his difficulties with the English language. (*Id.* at 5). The Commissioner adds that just because Plaintiff cannot communicate in English and just because the underlying proceedings have lasted for a long time does not mean that Plaintiff is disabled and thus entitled to benefits. (*Id.* at 7). The Commissioner concludes that the Court should remand the case to the ALJ for the ALJ to: (1) further consider Plaintiff's ability to perform work in the national economy; and (2) take any further action needed to complete the administrative record and issue a new decision. (*Id.* at 8).

Plaintiff replies that there are no outstanding issues that need to be resolved. (ECF No. 17 at 3). Responding to Defendant's argument that the vocational expert's testimony is contradicted by Plaintiff's work history, Plaintiff asserts that the law of the case is that he lacks the ability to speak, read, or write English and that the Commissioner should not get another chance to relitigate the issue. (*Id.* at 3-4). Plaintiff adds that, on remand, the ALJ was directed to reconcile the conflict between the DOT and the vocational expert's testimony. (*Id.*). And on remand, "[t]he vocational expert stated quite clearly that due to the inability to speak, read and write English, the jobs identified would be eliminated and that no other light jobs would exist," which testimony is consistent with the DOT." (*Id.*). So, Plaintiff asserts that any conflict has now been resolved in Plaintiff's favor. (*Id.*). Plaintiff concludes that he satisfies the three-part test for determining when reversal and award of benefits is warranted. (*Id.* at 5).

**B.      Analysis.**

When evaluating whether this case presents the "rare circumstances" justifying a reversal and remand for payment, the court normally applies a three-step test. *Treichler v. Commissioner of Social Security*, 775 F.3d 1090, 1100-01 (9th Cir. 2014). First, the court asks whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Id.* Second, if the ALJ has erred, the court asks whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful. *Id.* Third, if the court concludes that no outstanding issues remain and further proceedings would not be useful, the court may find the relevant

testimony true as a matter of law and then must determine whether the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of the proceeding. *Id.* When all three elements of the test are satisfied, a case raises the "rare circumstances" that allow the court to exercise its discretion to depart from the ordinary remand rule and to award benefits. *Id.* at 1101-1102. However, even when those "rare circumstances" are present, the decision whether to remand a case for additional evidence or simply to award benefits is in the court's discretion. *Id.*

### 1. Whether the ALJ erred.

Here, both Plaintiff and the Commissioner agree that the ALJ erred in rejecting the vocational expert's testimony and in assessing that Plaintiff could complete the jobs of assembler, electrical accessories; subassembler; and routing clerk, despite the fact that the DOT shows that each job requires language level 2.[4] So, the first prong of the analysis is satisfied in favor of Plaintiff's request for reversal and award of benefits. The Court thus moves on to the second step.

### 2. Whether the record has been fully developed.

In considering the second prong, the Court asks whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules. *Treichler*, 775 F.3d 1090, 1103-1104 (9th Cir. 2014). The Ninth Circuit's decision in *Treichler* stands for the proposition that significant factual conflicts exist in the record when the claimant's testimony conflicts with the objective medical evidence. *Id.* The Ninth Circuit noted that, when read in

---

[4] SSR 00-4p, requiring the ALJ to resolve conflicts between vocational experts' occupational information and the DOT, was in force at the time of the ALJ's decision here. The agency rescinded it on January 6, 2025, and replaced with SSR 24-3p, through which ruling the agency "will no longer require our adjudicators to identify and resolve conflicts between occupational information provided by [vocational specialists] and [vocational experts] and information in the DOT." SSR 24-3p (Jan. 6, 2025). However, the amended rule explicitly states that the agency "expect[s] that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions." SSR 24-3p (Jan. 6, 2025). So, the Court finds that the ALJ erred by not resolving the conflict between the DOT and the ALJ's ultimate conclusion that Plaintiff could perform the jobs of assembler, electrical accessories; subassembler; and routing clerk.

context, the record "indicates only that [the claimant] required medical assistance to manage the pain stemming from his injuries; it does not establish that this pain rendered him unemployable." *Id.* at 1105. So, the Ninth Circuit concluded that, because the record raised questions regarding the extent of the claimant's impairment, the case involved "exactly the sort of issues that should be remanded to the agency for further proceedings." *Id.*

Here, the record has not been fully developed because the factual issue of whether Plaintiff's inability to communicate in English renders him unemployable is unresolved. Like the record in *Treichler*, where the claimant's testimony conflicted with the objective medical evidence, here, the vocational expert's testimony conflicts with Plaintiff's work history. The vocational expert stated that there "are no jobs available where the hypothetical individual is not able to speak English," which statement conflicts with evidence of Plaintiff performing his former job as a taper. *Compare* (AR 1415) (vocational expert's testimony) *with* (AR 324) (showing that Plaintiff was employed as a taper from March 2003 until March 2015).

Plaintiff's arguments to the contrary do not change this conclusion. Plaintiff is correct that the vocational expert's testimony—that Plaintiff could not perform the jobs consistent with his RFC due to his limited English language abilities—is consistent with the DOT, which assesses a language level of 2 for these jobs. But that single consistency does not mean that the record has been fully developed. Additionally, the Court recognizes that Plaintiff's ability to perform one job despite his English language limitations does not mean he could perform all jobs that require a similar language level. But the Court does not need to reach that conclusion to find that the record raises questions regarding the extent to which Plaintiff's English language limitations impact his ability to work. Ultimately, when read in context, the record does not establish that Plaintiff's English language limitations render him unemployable. And where there is conflicting evidence, a remand for award of benefits is inappropriate.

        3.      <u>Whether the record leaves not the slightest uncertainty as to the outcome.</u>

Even if the Court were to consider the record fully developed, the Court does not find that the record leaves not the slightest uncertainty as to Plaintiff's disability such that award of benefits is proper here. In *Benecke v. Barnhart*, the Ninth Circuit clarified that "in the unusual

case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy…remand for an immediate award of benefits is appropriate." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).  The Ninth Circuit's later decision in *Strauss v. Commissioner*, stands for the proposition that "the court is without authority to order payment of benefits absent a finding of disability." *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1136 (9th Cir. 2011).  There, the claimant had already gone through one appeals process, and the district court remanded the case for further administrative proceedings, providing specific instructions in the remand order. *Id.* at 1137.  The ALJ failed to follow those instructions on remand, and the claimant appealed again. *Id.*  On that appeal, the district court held that the ALJ had failed to comply with the remand order and, for that reason, awarded the claimant benefits. *Id.* at 1136-37.  The Commissioner appealed and the Ninth Circuit reversed. *Id.*  It explained that the district court could not award benefits solely because an ALJ did not follow a court's instructions on remand.  *See id.* at 1138.  Even if the ALJ did not follow instructions, "the court may not move from that conclusion directly to an order requiring the payment of benefits without the intermediate step of analyzing whether, in fact, the claimant is disabled." *Id.*  "Notably, the required analysis centers on what the record evidence shows about the existence or non-existence of a disability." *Id.*

      The Ninth Circuit has also clarified that illiteracy is not a disability.  "A claimant is not per se disabled if he or she is illiterate, i.e. unable to speak English." *Mui Si Voong v. Astrue*, 641 F.Supp.2d 996, 1010 (E.D. Cal. 2009) (citing *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001)).  In *Pinto*, the Ninth Circuit noted that the ALJ had failed to clarify how a claimant's language and literacy abilities factored into the ALJ's analysis that the claimant could perform her past relevant work at step four. *Id.* at 846.  This was despite the fact that the DOT description for that work required language ability above that possessed by the claimant. *Id.* at 846.  The Ninth Circuit found that the ALJ erred, but clarified that "[w]e do not suggest that applicants who are illiterate are entitled to a finding at step four of the disability proceeding that they are disabled.  A claimant is not per se disabled if he or she is illiterate.  We merely hold that in order

for an ALJ to rely on a job description in the [DOT] that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation." *Id.*

Here, the Court does not find that the record leaves no question as to whether Plaintiff has a disability such that award of benefits is appropriate. Unlike the record in *Benecke*, from which the claimant's inability to perform gainful employment in the national economy was clear, the record here does not make Plaintiff's inability to perform gainful employment in the national economy clear. Instead, Plaintiff's case is more like *Strauss* because the Court cannot find that Plaintiff is disabled. Like the case in *Strauss*, which went through more than one appeals process and in which the ALJ erred on remand, Plaintiff's case has also proceeded through the appeals process before and the ALJ erred on remand. And just like the court in *Strauss* could not award benefits simply because the ALJ did not follow instructions on remand, here, the Court is similarly limited. The Court cannot award benefits without first determining whether Plaintiff is, in fact, disabled. But the Court cannot do so because the sole reason that the vocational expert testified that Plaintiff could not find work in the national economy was because of his illiteracy in English.

As the Ninth Circuit has noted in *Pinto*, illiteracy is not a disability. And so, the Court cannot conclude from the record that Plaintiff is disabled just because he cannot communicate in English. Although the ALJ here erred in a similar fashion to the ALJ in *Pinto*—by not reconciling the discrepancy between his conclusion and the DOT—as the Ninth Circuit explained, this error does not mean that Plaintiff is automatically disabled and entitled to an award of benefits. Instead, it merits remand for the ALJ to address the discrepancy between the DOT and the jobs that the ALJ asserted Plaintiff could perform.

///

///

///

**IT IS THEREFORE ORDERED** that Plaintiff's motion for reversal (ECF No. 12) is **denied.**

**IT IS FURTHER ORDERED** that the Commissioner's motion for remand (ECF No. 16) is **granted.**

**IT IS FURTHER ORDERED** that this case is remanded for further proceedings so that the ALJ can: (1) further consider Plaintiff's ability to perform work in the national economy and specifically address the discrepancy between the DOT's language levels and the assembler, electrical accessories; subassembler; and routing clerk jobs that the ALJ assessed Plaintiff as being capable of performing; and (2) take any further action needed to complete the administrative record and issue a new decision.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter judgment accordingly and close this case.

DATED: February 4, 2025

DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE